| | |
|---|---|
| *KIMBERLY ANN MALANEY,* | ) |
| | ) |
| *Plaintiff* | ) |
| | ) |
| *v.* | )  *No. 2:16-cv-00404-GZS* |
| | ) |
| *NANCY A. BERRYHILL,* | ) |
| *Acting Commissioner of Social Security,*[1] | ) |
| | ) |
| *Defendant* | ) |

## *REPORT AND RECOMMENDED DECISION*[2]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal

raises the question of whether the administrative law judge supportably found the plaintiff capable

of performing work existing in significant numbers in the national economy.  The plaintiff seeks

remand on the bases that the administrative law judge's determination of her physical residual

functional capacity ("RFC") is unsupported by substantial evidence; he failed to properly evaluate

the physical RFC opinions of record; his determination of her mental RFC is unsupported by

substantial evidence; he failed to properly evaluate the mental RFC opinions of record; he erred in

relying solely on the so-called "Grid," the Medical-Vocational Guidelines contained in Appendix

2 to Subpart P, 20 C.F.R. § 404, to find her capable of performing work; and he erred in failing to

---

[1] Nancy A. Berryhill, who is now the Acting Commissioner of Social Security, is substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3).  The commissioner has admitted that the plaintiff has exhausted her administrative remedies.  The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement.  Oral argument was held before me on March 15, 2017, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

rule on her requests to reopen prior applications. *See* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 10) at 3-20. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through September 30, 2007, Finding 1, Record at 23; that she had severe impairments of affective disorders/mood disorder, anxiety-related disorder/anxiety disorder, personality disorder, and substance addiction disorder/polysubstance abuse (current status unclear), Finding 3, *id.* at 23; that she had the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations: she was limited to simple instructions and could accomplish simple tasks on a consistent schedule to complete a workday and workweek, could interact with co-workers and supervisors but not the general public, and could adapt to occasional routine changes in the workplace, Finding 5, *id.* at 28; that, considering her age (35 years old, defined as a younger individual, on her alleged disability onset date, July 1, 2006), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id.* at 43; and that she, therefore, had not been disabled from July 1, 2006, through the date of the decision, March 27, 2015, Finding 11, *id.* at 44. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Overview: Challenge to Physical, Mental RFC Determinations

"The ALJ's [administrative law judge's] findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater,* 172 F.3d 31, 35 (1st Cir. 1999) (citations omitted).

As counsel for the commissioner contended at oral argument, it is not the job of the court to reweigh the evidence. *See, e.g., Rodriguez,* 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts."). The mere fact that a claimant can point to evidence of record supporting a different conclusion does not, in itself, warrant remand. *See, e.g., Irlanda Ortiz v. Secretary of Health*

*& Human Servs.*, 955 F.2d 765, 769-70 (1st Cir. 1991) (noting that, "[a]lthough the record arguably could support a different conclusion," substantial evidence supported decision that claimant's capacity for full range of sedentary, unskilled work was not significantly reduced).

In this case, the administrative law judge carefully summarized the hearing testimony, "raw" medical evidence, and expert opinion evidence of record and explained why he resolved conflicts in that evidence in the manner that he did. *See* Record at 29-43. For that reason, as well as the reasons that follow, I conclude that his RFC determination survives scrutiny.

### B. Physical RFC Determination

### 1. Asserted Lack of Substantial Evidence

The plaintiff first challenges the finding that she had no severe physical impairment, contending that the administrative law judge erred in determining that she sustained only one injury when she was hit by a car in 2005, a broken arm that fully resolved, and failed to account for symptoms from migraine headaches and asthma. *See* Statement of Errors at 3-6. She contends that she suffered not only a right arm fracture, which continues to be symptomatic, but also a head injury and back pain as a result of her 2005 accident. *See id*. at 3-4.

### a. Residuals of 2005 Accident

With respect to her alleged head injury, the plaintiff relies on an emergency department checkbox indicating that she had a head injury, accompanied by a remark that she had an abrasion on her right forehead, "trauma treatment" that included a CT head scan, and a later summary from Spring Harbor Hospital ("Spring Harbor") noting "a history of a closed-head injury with loss of consciousness." *Id*. at 3; Record at 524-25, 563.

Yet, as the commissioner notes, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 16) at 2-3, the administrative law judge supportably found that she "did not require admission to the hospital and there is no indication that she lost consciousness

or had a head injury, as alleged[,]" Record at 24-25. Contemporaneous records make clear that, despite the plaintiff's forehead abrasion, she had no loss of consciousness at the scene of her November 28, 2005, accident or in the emergency department thereafter. Record at 524-25. She identifies no abnormal finding from the CT head scan. *See* Statement of Errors at 3-4. The April 2006 Spring Harbor note on which she relies, noting a "history" of head injury with loss of consciousness, *see* Record at 563, appears to be uncorroborated by the contemporaneous medical evidence, and the commissioner points to evidence of normal head, neck, and back findings on subsequent physical examinations, *see, e.g., id.* at 558 (normal physical examination in June 2006), 732, 760-61 (no head, neck, or back abnormalities noted in October 2006), 1180 (no head, neck, or back abnormalities noted by agency examining consultant Renato Medrano, M.D., in December 2012).

With respect to her alleged back pain, the plaintiff points to findings on x-ray after she was rear-ended in a car accident in February 2006 suggestive of a prior pubic ramus fracture, with some wedging on the first lumbar vertebra and an irregular endplate appearance. *See* Statement of Errors at 3; Record at 800-01. She notes that discitis or post-traumatic change were possible diagnoses, arguing "[t]hat these injuries needed to be considered in combination with the residuals from the earlier accident and subsequent exacerbations." Statement of Errors at 3-4; Record at 801. Yet, she points to no definitive diagnosis of those back impairments. *See* Statement of Errors at 3-4; *see also id.* at 24 (administrative law judge found "no reliable diagnosis of any impairment of the [plaintiff's] back, neck, or left leg"). Moreover, as the commissioner notes, *see* Opposition at 3, examinations of the plaintiff's back were normal in October 2006 and March 2008, *see* Record at 732, 761, 849, and she denied a history of musculoskeletal disorders during examinations in 2008, 2009, 2010, 2013, and 2014, *see id.* at 813, 822, 878, 909, 922, 929, 947, 1099, 1387, 1411. In

addition, in December 2012, Dr. Medrano found no cervical, thoracic, or lumbar spine abnormality. *See id*. at 1180-81.

The plaintiff concedes that her arm fracture itself essentially healed, but asserts that the administrative law judge erred in finding no ongoing residuals, *see* Statement of Errors at 4, pointing to documentation of (i) a visit to the emergency department in October 2006 for right shoulder pain following an incident in which she fell off a step stool, resulting in a diagnosis of shoulder sprain, *see* Record at 743-44, (ii) her report in May 2008 that she had right shoulder pain at a 10/10 intensity, *see id*. at 842, (iii) a visit to the emergency department in December 2008 for acute right arm pain, constant, burning, and squeezing in nature, *see id*. at 815, (iv) her report of increasing right arm pain in March 2009, *see id*. at 959, (v) a June 2009 x-ray revealing that there might be an underlying fracture of the bone although the hardware remained intact, *see id*. at 942, and (vi) a visit to the emergency department in August 2013 when she exacerbated her right arm pain while trying to clean a refrigerator, *see id*. at 1249-51.

However, as the commissioner argues, *see* Opposition at 4, despite these flare-ups, the administrative law judge supportably concluded that the right arm/shoulder injury was not significantly limiting. By August 2006, the plaintiff's surgeon noted that her fracture was well-healed and that she had a full range of motion with no pain on palpation. *See* Record at 569. She retained full range of motion and intact sensation in October 2006. *See id*. at 760. She had non-tender extremities with normal range of motion in March 2008, *see id*. at 849, and denied a history of musculoskeletal disorder in August 2008, *see id*. at 822. Although she complained of right arm pain in December 2008, *see id*. at 810, an x-ray was normal, *see id*. at 818, and she did not receive follow-up care. She reported increasing arm pain three times in the spring of 2009, but left without treatment each time. *See id*. at 955, 964, 966. Dr. Medrano observed normal extremities with full

strength, no muscle atrophy, and intact sensation in December 2012. *See id.* at 1180. The plaintiff denied musculoskeletal problems in November 2013 and November 2014. *See id.* at 1387, 1411.

### b. Migraine Headaches

The administrative law judge found "no reliable diagnosis of migraine headaches in the current record." *Id.* at 24. He acknowledged that the plaintiff had presented to the emergency department in March 2004 and May 2004 with complaints of a "migraine" but pointed out that she reportedly left abruptly when denied requested pain medication. *See id.* He added: "The record describes numerous other attempts at obtaining requested drugs through the emergency room with complaints of headaches or pain that cannot be substantiated on independent exams; and when declined, the [plaintiff] becomes combative." *Id.* (citations omitted).

The plaintiff contends, *inter alia*, that the claimed absence of support for headaches is contradicted by documentation of migraines featuring photophobia in March and May 2004. *See* Statement of Errors at 5. Yet, as noted above, the administrative law judge questioned the reliability of those diagnoses based on contemporaneous notations of concern for drug-seeking behavior. *See* Record at 24, 650, 656, 667. Moreover, as the commissioner suggests, *see* Opposition at 5, during the relevant time period, the plaintiff denied headaches in May 2007, July 2008, and February and April 2010, *see* Record at 709, 827, 865, 872, 1141. When she reported headaches in September 2011 and September 2012, she was not diagnosed with a headache disorder. *See* Opposition at 5; Record at 1038-39, 1075, 1077. She denied headaches in November 2012, February 2013, and February 2014. *See* Opposition at 5; Record at 1109, 1265, 1411-12.

### c. Asthma

The plaintiff, finally, faults the administrative law judge for failing to assess limitations resulting from a severe asthma/shortness of breath impairment, noting that an agency

nonexamining consultant, Donald Trumbull, M.D., characterized asthma as her primary impairment, and pointing to instances in which she complained of shortness of breath/anxiety in February 2010, panic/asthma attack in April 2010, and shortness of breath in November 2012. *See* Statement of Errors at 5-6. However, the administrative law judge supportably determined that the plaintiff's asthma was well-controlled with inhaler medication and nonsevere. *See* Record at 24. Dr. Trumbull found the plaintiff's asthma nonsevere after specifically mentioning the April 2010 record on which the plaintiff partly relies, *see id.* at 997, and the asthma exacerbation noted in November 2012 improved within a few weeks, *see id.* at 1109-10, 1212. The plaintiff points to no subsequent evidence of uncontrolled asthma. *See* Statement of Errors at 5-6. As the commissioner suggests, *see* Opposition at 5-6, the record evidence indicates otherwise. Dr. Medrano noted no functional limitations stemming from asthma on examination in December 2012, *see* Record at 1181, and agency nonexamining consultants J.H. Hall, M.D., and Anthony Pileggi, M.D., found no severe asthma impairment in January 2013 and September 2013, respectively, *see id.* at 130, 166.

### 2. Challenge To Weighing of Opinion Evidence

The plaintiff next seeks remand on the basis that the administrative law judge improperly rejected the physical RFC opinion of examining orthopedic surgeon Frank A. Graf, M.D., while crediting the opinions of agency nonexamining consultant Dr. Trumbull and agency examining consultant Dr. Medrano. *See* Statement of Errors at 6-11.

### a. Dr. Graf

In a letter to the plaintiff's counsel dated January 21, 2015, Dr. Graf noted that he had examined and interviewed the plaintiff and reviewed certain medical records, diagnosing her with (i) direct impact injuries to the occiput with occipital scalp hematoma and altered short-term memory and intermittent visual effects, (ii) comminuted fracture proximal humerus on the right

status post ORIF [open reduction internal fixation] with long plate and screws applied, (iii) intermittent numbness and tingling in both hands in a C6, C7, and C8 spinal nerve root pattern with C6 dominant, and (iv) chronic lumbosacral pain with intermittent left lateral thigh pain. *See* Record at 1434-37. He summarized:

> This individual has ongoing residuals of car-pedestrian motor vehicle accident with continued weakness and restricted ranges of motion in the right upper extremity. She has ongoing proximal cervical component to right and left upper extremity intermittent numbness and tingling. She has chronic lumbosacral pain without full-fledged radiculopathy in the lower extremities with diminished tendo Achilles reflex and lateral thigh pain patterning.

> The [plaintiff] was last employed gainfully in 2005 with no employment subsequent to the motor vehicle accident. While the [plaintiff] has training as a CNA [certified nursing assistant], her certification has lapsed and because of the upper extremity weakness and sensory changes, she would not be able to participate in codes or patient transfers. With her psychiatric diagnoses and her recent efforts to be opiate free, she is not able to maintain concentration and pace to allow employability.

> The combination of the residuals of the motor vehicle accident and the [plaintiff's] psychiatric diagnoses render her disabled and not capable of sedentary or any other type of employment.

*Id*. at 1437.

He found, *inter alia*, that the plaintiff could sit for only two hours in an eight-hour workday, stand for only one hour, and walk for only one hour, could only occasionally lift or carry 11 to 20 pounds, and could use both her right and left upper extremities only occasionally. *See id*. at 1438-39.

The administrative law judge deemed the Graf opinion, as well as that of examining psychiatrist John L. Newcomb, M.D., conclusory and contrary to the weight of the evidence as a whole, *see id*. at 40, explaining:

> The conclusions reached by these physicians are not supported by medically acceptable signs, symptoms, and/or laboratory findings and appear to be based totally on the [plaintiff's] subjective complaints and out of proportion to the objective evidence obtained during and for the course of treatment. There are no

treatment records to substantiate the severe degrees of limitation described by Dr. Newcomb, nor is there any evidence to substantiate Dr. Graf's statement of total disability, or his statements concerning weakness in the right arm or nerve dysfunction. Despite not having her own home, the [plaintiff] is independent with self-care activities and she reports an ability to care for her grandchild and her cousin's child, to prepare meals, perform household chores, do laundry and cook simple meals. Dr. Newcomb makes little reference to the [plaintiff's] proliferative history of drug-seeking behavior and her non-compliance with treatment. In fact, he describes her as having participated in regular psychiatric treatment since 2006. This could not be farther from the truth and even a cursory review of the record illustrates this fact. Similar to the [plaintiff's] attorney, who attempted to connect all of the [plaintiff's] problems to a car accident in 2005, Dr. Graf and Dr. Newcomb state that this accident is what precipitated her psychiatric distress and led to her problems with maintaining employment. This too is clearly contradicted by the records. Moreover, there is nothing to suggest that she was "severely injured" in this accident or that she ever lost consciousness. It is true that she broke her arm and required surgery to correct it; but she was not hospitalized after the accident; there are [no] other injuries established from this accident; she made a full recovery from her right upper extremity surgery; and her drug abuse issues date back to her teenage years with Methadone records going back to 1998 – all of these well-established facts in the record weigh against a finding that her accident is at the cause of her alleged disability.

The undersigned has evaluated this evidence and finds that even though these reports are from specialists, the opinions of Dr. Graf and Dr. Newcomb are inconsistent and not supported by the medical evidence as a whole. Moreover, these were one-time examinations performed at the request of the [plaintiff's] representative. Therefore, these reports are more akin to advocacy opinions and thus are accorded little weight.

*Id*. at 40-41 (citations omitted).

The plaintiff argues that the administrative law judge erroneously rejected the Graf opinion on the improper bases that (i) it constituted an "advocacy" opinion of a one-time examining consultant, (ii) there was no evidence that she suffered a head injury in the 2005 accident, and (iii) Dr. Graf failed to provide a basis for his finding of ongoing residuals of that accident. *See* Statement of Errors at 7-8.

The commissioner counters that the administrative law judge properly considered the fact that Dr. Graf examined the plaintiff on only one occasion and that, because he gave other well-

supported reasons for discounting the Graf opinion, his description of the opinion as an advocacy opinion was at most harmless error.  *See* Opposition at 9.  I agree.

The fact that Dr. Graf performed a one-time examination was permissibly taken into consideration.  *See* 20 C.F.R. §§ 404.1527(c)(2)(i) & (ii), 416.927(c)(2)(i) & (ii) (directing administrative law judge to consider the length, nature, and extent of the relationship between doctor and claimant).

The administrative law judge's reliance on the lack of evidence that the plaintiff had suffered a head injury in her 2005 accident was also not misplaced.  For the reasons discussed above, he supportably concluded that there was no such evidence.  He explained that Dr. Graf's finding of ongoing residuals of the accident was unsupported even by Dr. Graf's own findings on examination, which were largely unremarkable.  *See* Record at 39.  The plaintiff does not elaborate on why, in her view, that conclusion was wrong.  *See* Statement of Errors at 8.

Beyond this, as the commissioner notes, *see* Opposition at 9, the administrative law judge provided other reasons for rejecting the Graf opinion that the plaintiff does not challenge; for example, that no treatment records substantiated his statement of total disability and that his findings were at odds with the plaintiff's activities of daily living.  *See* Record at 40-41; Statement of Errors at 7-8.

In these circumstances, as the commissioner argues, *see* Opposition at 9, any error in rejecting the opinion in part on the basis that it was an "advocacy opinion" is harmless, *see, e.g., Waddell v. Colvin*, No. 2:14-cv-105-JHR, 2015 WL 1723682, at *6-*7 (D. Me. Apr. 14, 2015) (rejection of one-time examining physician's opinion in part on the basis that it constituted an "advocacy opinion" did not warrant remand when administrative law judge provided other supportable reasons for rejecting the opinion).

### b. Drs. Trumbull and Medrano

The plaintiff next takes issue with the administrative law judge's decision to give "great evidentiary weight" to the RFC assessments of Drs. Trumbull and Medrano.  *See* Statement of Errors at 8-11; Record at 42.  She notes that, in setting forth his overall conclusion that she had no severe physical impairment, Dr. Trumbull boldfaced and underlined, "Attitude at 3/5/09 Mercy visit and [history of] drug abuse severely erodes credibility[,]" and in summarizing that treatment note, he boldfaced and underlined, "Pt told she wouldn't be rec'ing valium for chronic shoulder pain.  Pt responds: 'they always do.'  Left w/out signing paperwork."  Statement of Errors at 9; Record at 995, 997 (emphasis omitted).

The plaintiff argues that "[i]t is apparent [Dr. Trumbull] took offense with [her] 'attitude' toward other medical professionals, rather than looking at the actual record as a whole, which certainly does not support an assessment of no physical limitations whatsoever."  Statement of Errors at 9.

The plaintiff further contends that Dr. Trumbull failed to consider evidence that she could abstain from the use of Valium, namely, a June 2009 emergency department notation that she had taken a leftover Valium prescribed eight months earlier for arm pain caused when she braced herself from a fall.  *See id.*  She adds that, in summarizing a June 16, 2009, x-ray finding, Dr. Trumbull boldfaced and underlined the radiologist's finding of intact hardware and anatomic alignment but not his finding that there was a visible fracture margin and there might be an underlying fracture of the bone.  *See id.* at 10.  She asserts that the radiologist himself indicated that this finding would not rule out serious pain caused by an underlying fracture.  *See id.*

Finally, the plaintiff contends that the administrative law judge's heavy reliance on the Medrano opinion likewise was misplaced because he (i) overlooked the fact that Dr. Medrano

reviewed no records, rendering an opinion "essentially in a vacuum[,]" and (ii) mischaracterized the Medrano opinion as consistent with the rest of the record based on his faulty RFC finding. *See id.* at 10-11.

As the commissioner rejoins, *see* Opposition at 10, even if Dr. Trumbull erred in citing the plaintiff's drug-seeking behavior, he also noted a lack of objective support for any functional limitations, *see, e.g.,* Record at 995, 997.[3] This was a proper reason to accord weight to the Trumbull opinion. *See, e.g., Flood v. Colvin*, No. 15-2030, 2016 WL 6500641, at *1 (1st Cir. Oct. 20, 2016) (even if administrative law judge erred in considering claimant's drug-seeking behavior, any error was harmless because other findings supported credibility determination, including inconsistency of claimant's allegations with objective medical findings). Further, the administrative law judge deemed the Trumbull opinion consistent with other record evidence, including the later opinions of agency nonexamining consultants Drs. Hall and Pileggi. As the commissioner notes, *see* Opposition at 10, the plaintiff does not contest the administrative law judge's decision to accord great weight to those two opinions, *see* Statement of Errors at 6-11.

The administrative law judge also permissibly accorded great weight to the Medrano opinion. While Dr. Medrano reviewed no records, he personally examined the plaintiff. *See* Record at 1180-81. The administrative law judge supportably deemed the Medrano opinion consistent with other evidence of record, including the Hall and Pileggi opinions. For the reasons discussed above, in crafting his RFC determination, the administrative law judge did not err in rejecting the plaintiff's claims of functional limitations resulting from residuals of the 2005 accident, migraine headaches, and asthma.

---

[3] To the extent that the plaintiff means to suggest that Dr. Trumbull (and the administrative law judge) ignored a portion of the June 16, 2009, radiologist's report providing objective evidence of functional limitations, I disagree. The radiologist made no definitive finding of a fracture, *see* Record at 942, and the plaintiff points to no evidence that such a definitive finding was ever made.

## C. Mental RFC Finding

### 1. Asserted Lack of Substantial Evidence

The plaintiff next contends that the administrative law judge's mental RFC finding is unsupported by substantial evidence in that (i) the record is replete with evidence of her serious mental problems, which she asserts have worsened considerably, and (ii) the administrative law judge based the determination on mistaken findings, including the finding that she has at all times denied being suicidal or attempting suicide. *See* Statement of Errors at 11-14.

With respect to the first point, in her statement and errors and through counsel at oral argument, the plaintiff cited a number of abnormal findings by treating and examining sources, for example, of pressured speech, moderately impaired concentration, agitation, tearfulness, and Global Assessment of Functioning ("GAF") scores in the 40s and 50s.[4]  *See id*.  Yet, as the commissioner's counsel countered at oral argument, this amounts to an invitation to the court to reweigh the evidence.

As the commissioner observes, *see* Opposition at 12, the administrative law judge gave great weight to the mental RFC opinions of agency nonexamining consultants Lewis F. Lester,

---

[4] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000) ("DSM-IV-TR").  The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning."  *Id.*  The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death).  *Id.* at 34.  A GAF score of 51 to 60 represents "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)."  *Id.* (boldface omitted).  A GAF score of 41 to 50 represents "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  *Id.* (boldface omitted).  In 2013, the DSM-IV-TR was superseded by the American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) ("DSM-V"), which jettisoned the use of GAF scores.  *See* DSM-V at 16 ("It was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice.").

Ph.D., and David R. Houston, Ph.D., who reviewed much of the underlying evidence on which the plaintiff relies, *see* Record at 130-32, 166-68, and she does not separately challenge his decision to accord those opinions great weight, *see* Statement of Errors at 14-18. Moreover, in summarizing the plaintiff's longitudinal history of substance abuse/mental health treatment, the administrative law judge acknowledged the existence of abnormal findings but emphasized the existence of a number of normal ones, reasonably inferring that, overall, treating and examining sources' findings on examination were indicative of a higher level functioning than alleged. *See* Record at 31-40.

With respect to the second point, the plaintiff notes that, on several occasions, treating providers indicated that she had suicidal thoughts/ideation. *See* Statement of Errors at 11-12; Record at 564 (April 2006), 623 (April 2006), 627 (April 2006), 1378-80 (May 2013).

However, as the commissioner argues, *see* Opposition at 11 n.2., the plaintiff demonstrates no harmful error in the administrative law judge's finding that, despite her testimony at hearing that she had repeatedly been suicidal, she had "*at all times* denied being suicidal or ever attempting suicide[,]" Record at 43 (emphasis in original). The observation was one of several bases on which the administrative law judge found the plaintiff's statements not entirely credible, *see id.* at 42-43, a finding that she has not separately challenged, *see generally* Statement of Errors. Moreover, as the commissioner notes, *see* Opposition at 11 n.2, treatment records indicate that the plaintiff repeatedly denied suicidality throughout the relevant period, *see, e.g.*, Record at 558, 608, 725, 845, 866, 869, 1026, 1400.

### 2.  Challenge to Weighing of Opinion Evidence

The plaintiff next challenges the administrative law judge's evaluations of the opinions of examining psychiatrist Dr. Newcomb, agency nonexamining consultant Peter G. Allen, Ph.D., and

agency examining consultant Christopher Muncie, Psy.D. *See* Statement of Errors at 14-18. I find no reversible error.

### a. Dr. Newcomb

Dr. Newcomb opined in January 2015 that the plaintiff had marked limitations in her activities of daily living, social functioning, and concentration, persistence, or pace, was unable to meet competitive standards in almost every area of unskilled work due to a depressed mood, was unable to meet competitive standards for semi-skilled and skilled work due to severe memory impairment, and was unable to meet competitive standards in other specific vocational areas due to poor concentration, intrusive thoughts, and a disheveled appearance. *See* Record at 1413, 1423, 1431-32.

As noted above, the administrative law judge gave little weight to that opinion because (i) it was not supported by medically acceptable signs, symptoms, or laboratory findings and appeared to be based totally on the plaintiff's subjective complaints, (ii) it was inconsistent with the objective evidence of record, (iii) treatment notes did not substantiate the severe degrees of limitation Dr. Newcomb described, (iv) Dr. Newcomb's statement that the plaintiff had had regular psychiatric treatment since 2006 was inconsistent with the record, and (v) Dr. Newcomb's statement that the plaintiff's 2005 accident precipitated her psychiatric distress was inconsistent with the record. *See id.* at 40-41.

The plaintiff challenges that determination on the bases that he erred in characterizing the Newcomb opinion as (i) a presumptively biased "advocacy opinion[,]" (ii) "based totally on [her] subjective complaints and out of proportion to the objective evidence[,]" and (iii) inconsistent with evidence that she did not sustain a head injury in her 2005 accident. Statement of Errors at 16 (quoting Record at 40-41).

As in the case of the administrative law judge's handling of the Graf opinion, any error in characterizing the Newcomb opinion as an "advocacy opinion" is harmless. The administrative law judge supplied several reasons for assigning little weight to the Newcomb opinion, some of which the plaintiff does not challenge. *See, e.g., Waddell*, 2015 WL 1723682, at *6-*7 (rejection of one-time examining physician's opinion in part on the basis that it constituted an "advocacy opinion" did not warrant remand when administrative law judge provided other supportable reasons for its rejection).

As the commissioner suggests, *see* Opposition at 15-16, any error in characterizing the Newcomb opinion as based completely on the plaintiff's subjective complaints is harmless. While Dr. Newcomb did cite psychiatric signs such as tearfulness, difficulty maintaining attention, psychomotor agitation, and rambling speech, *see* Record at 1428-29, the administrative law judge supportably deemed his opinion inconsistent with the objective evidence overall, which, as discussed above, contained a number of normal findings on mental status examination. In addition, the plaintiff does not challenge the administrative law judge's findings that treatment notes did not substantiate the severe limitations Dr. Newcomb described or that Dr. Newcomb's statement that she received regular psychiatric treatment is inconsistent with the record. *See* Statement of Errors at 14-16.

Finally, for the reasons discussed above, the administrative law judge did not err in rejecting Dr. Newcomb's conclusion that the plaintiff's psychiatric distress was precipitated by injuries sustained in her 2005 accident as inconsistent with the evidence of record.

### b. Dr. Allen

In May 2010, Dr. Allen found that the plaintiff's mental impairments, including drug and alcohol abuse, met the criteria of Listing 12.09, Appendix 1 to Subpart P, 20 C.F.R. § 404 (the

"Listings"), but that without substance abuse, her mental impairments were nonsevere. *See* Record at 976-88. The administrative law judge explained that the Allen opinion was "not accorded great weight" because it was unsupported by later-adduced evidence. *Id*. at 42. He added that "there is no *reliable* period of sobriety in which to assess the [plaintiff's] me[nt]al functioning outside of her extensive and questionably ongoing abuse of illicit and prescription drugs." *Id*. (emphasis in original).

The plaintiff correctly notes that, if the administrative law judge had accepted the Allen opinion, he would have been required to follow a bifurcated approach and determine whether any continuing drug abuse was material to the plaintiff's disability. Statement of Errors at 17; 20 C.F.R. §§ 404.1535(a), 416.935(a). She complains that (i) he "sidestepped" this analysis by giving the opinion something less than great weight, (ii) his vague reference to the opinion as unsupported by later-adduced evidence was "insufficient[,]" and, (iii) to the extent that he relied on the lack of a reliable period of sobriety, his reasoning was illogical because that would not have obviated the need to recognize that a claimant is disabled before factoring out the effects of drug and alcohol abuse. Statement of Errors at 17-18.

Nonetheless, as the commissioner rejoins, see Opposition at 17-18, the administrative law judge properly found the Allen opinion inconsistent with later-submitted evidence, including the 2013 opinions of Drs. Lester and Houston. I find no fault in his resolution of this evidentiary conflict.

### c. Dr. Muncie

In May 2010, Dr. Muncie examined the plaintiff, concluding that "it would appear that ongoing legal as well as substance abuse issues would negatively impact her ability to maintain employment" and that "underlying personality traits may interfere with her ability to modulate and

regulate her emotions adaptively." Record at 973. He concluded: "Consequently, mood variability may interfere with her overall ability to persist on tasks as well as with her overall motivation." *Id*. He diagnosed substance dependence disorder and borderline personality disorder and assessed a GAF score of 70. *See id*.[5]

The administrative law judge summarized the Muncie findings but did not explain the weight, if any, given to them. *See id*. at 32-33, 40-42. The plaintiff argues that it is apparent that he failed to properly consider the Muncie evidence, including the effect of personality traits and mood variability. *See* Statement of Errors at 18. As the commissioner rejoins, *see* Opposition at 18-19, any error in failing to articulate the weight given the Muncie opinion is harmless because the administrative law judge relied on the opinions of Drs. Lester and Houston, both of whom had considered the Muncie opinion and opined that the plaintiff could still perform unskilled work despite her impairments, *see, e.g., Enman v. Colvin*, Civil No. 2:13-cv-307-DBH, 2014 WL 5394577, at *4-*5 (D. Me. Oct. 21, 2014) (claimant not entitled to remand when administrative law judge relied on opinions of agency nonexamining consultants who considered the evidence the claimant contended was erroneously assessed).

### D. Reliance on Grid

In deeming the plaintiff able to perform work existing in significant numbers in the national economy, the administrative law judge relied on the Grid. *See* Record at 44.

Use of the Grid is appropriate when a rule accurately describes an individual's capabilities and vocational profile. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 462 & n.5 (1983). When a

---

[5] A GAF score of 61 to 70 reflects "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV-TR at 34 (boldface omitted).

claimant's impairments involve only limitations related to the exertional requirements of work, the Grid provides a "streamlined" method by which the commissioner can meet her burden of showing that there is other work a claimant can perform. *See, e.g., Heggarty v. Sullivan*, 947 F.2d 990, 995 (1st Cir. 1991). However, in cases in which a claimant suffers from nonexertional as well as exertional impairments, the Grid may not accurately reflect the availability of other work he or she can do. *See, e.g., id.* at 996; *Ortiz v. Secretary of Health & Human Servs.*, 890 F.2d 520, 524 (1st Cir. 1989). Whether the commissioner may rely on the Grid as a "framework" in these circumstances depends on whether a nonexertional impairment "significantly affects [a] claimant's ability to perform the full range of jobs" at the appropriate exertional level. *Id.* (citation and internal quotation marks omitted). If a nonexertional impairment is significant, the commissioner generally may not rely on the Grid to meet her Step 5 burden but must employ other means, typically use of a vocational expert. *See, e.g., id.*

Even in cases in which a nonexertional impairment is determined to be significant, however, the commissioner may yet rely exclusively upon the Grid if "a non-strength impairment . . . has the effect only of reducing that occupational base marginally[.]" *Id.* "[A]though a nonexertional impairment can have a negligible effect, ordinarily the ALJ [administrative law judge] must back such a finding of negligible effect with the evidence to substantiate it, unless the matter is self-evident." *Seavey v. Barnhart,* 276 F.3d 1, 7 (1st Cir. 2001) (citation and internal quotation marks omitted).

The administrative law judge addressed the impact of the plaintiff's nonexertional impairments on the use of the Grid, explaining:

> The [plaintiff's] ability to perform work at all exertional levels has been compromised by nonexertional limitations. However, these limitations have little or no effect on the occupational base of unskilled work at all exertional levels. In so finding, the undersigned takes notice of <u>Garcia-Martinez v. Barnhart</u>, 111 Fed.

Appx. 22, 23, 2004 WL 2240136 (1st Cir. Oct. 1, 2004), wherein the First Circuit held that a mental impairment that limited a claimant to work of a routine, repetitive nature that did not involve undue pressure or interactions with the public did not preclude use of the Grid as a framework. This finding is also supported by Social Security Ruling 85-15, which sets forth that the basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. In the instant case, the limitations described in finding #5 of this decision do not amount to a substantial loss of such abilities.

Record at 44.

In her statement of errors, the plaintiff focuses not on the use of the Grid with respect to the mental RFC actually found by the administrative law judge but, rather, its use with a mental RFC determination that, she contends, is unsupported by substantial evidence. *See* Statement of Errors at 18-19 & n.4. That argument is unavailing for the reasons discussed above.

However, at oral argument, her counsel made two arguments pointedly predicated on the mental RFC actually found. First, she contended that, given the multiple limitations he assessed, the administrative law judge was obliged to obtain the testimony of a vocational expert rather than relying on the Grid, a proposition for which she cited *Roman-Roman v. Commissioner of Soc. Sec.*, 114 Fed. Appx. 410 (1st Cir. 2004). Second, she argued that neither authority cited by the administrative law judge, *Garcia-Martinez* and Social Security Ruling 85-15 ("SSR 85-15"), supports the proposition that a restriction to adapting "to occasional routine changes in the workplace" is compatible with the sole use of the Grid. Finding 5, Record at 28.

These arguments, which were not included in the statement of errors, are waived. *See, e.g., Farrin v. Barnhart,* No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006). Indeed, counsel for the commissioner had no opportunity to respond even at

oral argument to the second argument, which was raised for the first time in rebuttal. In the alternative, even if these arguments were not waived, they are unavailing.

In *Roman-Roman*, the First Circuit held that an administrative law judge's determination that a claimant's mental difficulties did not significantly erode the occupational base available for unskilled light work was unsupported by substantial evidence, warranting remand. *See Roman-Roman*, 114 Fed. Appx. at 412. The First Circuit noted that even the most positive evaluations of the claimant's mental condition indicated that his function was moderately limited in several categories, including understanding, concentration, and social interaction, and, "[i]n the absence of a better explanation as to how these medical findings illustrate that a nearly full set of unskilled light work is available to [the claimant], we believe that a translation from medical evaluations to job prospects was more appropriately reserved for a vocational expert." *Id.* at 412.

This case is materially distinguishable from *Roman-Roman* in that the administrative law judge explained his finding, with citation to authorities. As noted above, the plaintiff's counsel argues that the explanation does not withstand scrutiny insofar as it concerns the limitation "to occasional routine changes in the workplace[.]" She notes that (i) *Garcia-Martinez* is silent with respect to that particular limitation, *see Garcia-Martinez*, 114 Fed. Appx. at 23, and (ii) SSR 85-15 states that the basic mental demands of unskilled work include the ability, on a sustained basis, "to deal with changes in a routine work setting[,]" SSR 85-15, reprinted in West's Social Security Reporting Service Rulings 1983-1991, at 347. She argues that an ability "to deal with *occasional* routine changes in the workplace" represents a "[s]ubstantial loss of the ability to "deal with *changes* in a routine work setting[,]" *id.* (emphasis added), undermining reliance on the Grid. As the commissioner notes, *see* Opposition at 19, this court has held otherwise, *see, e.g., Swormstedt*

*v. Colvin*, No. 2:13-cv-00079-JAW, 2014 WL 1513347, at *1, *6 (D. Me. Apr. 16, 2014) (limitation to "occasional changes in the routine workplace" not incompatible with use of Grid).

### E. Failure To Address Request To Reopen Prior Decisions

The plaintiff finally complains that the administrative law judge erred in failing even to address her counsel's request to reopen previously adjudicated SSD and SSI claims on the basis that she had produced new and material evidence demonstrating good cause for reopening pursuant to 20 C.F.R. §§ 416.1488, 416.1489, 404.988, and 404.989. *See* Statement of Errors at 19-20; Record at 118-20, 509-10.

She adds that reopening also was warranted pursuant to Social Security Ruling 91-5p ("SSR 91-5p"), which provides that claimants may establish good cause for missing a deadline when they have a mental condition that limits their ability to do things for themselves and were unrepresented at the time of the missed deadline. *See* Statement of Errors at 20. She complains that the administrative law judge failed to consider Dr. Newcomb's evidence that she more likely than not was "significantly impaired psychiatrically in pursuing her own remedy before she had a lawyer." *Id*. (quoting Record at 1430).

The commissioner correctly observes that, absent a constitutional claim, this court lacks jurisdiction to review a refusal to reopen a previously adjudicated claim. *See* Opposition at 19-20; *Dvareckas v. Secretary of Health & Human Servs*., 804 F.2d 770, 771 (1st Cir. 1986). She persuasively argues that, even if one construes the plaintiff's citation to SSR 91-5p as raising a constitutional challenge, remand would be an empty exercise. *See* Opposition at 20; *Ward v. Commissioner of Soc. Sec*., 211 F.3d 652, 656 (1st Cir. 2000) ("[A] remand is not essential if it will amount to no more than an empty exercise.").

In her prior applications, the plaintiff alleged disability beginning on July 1, 2006, *see* Record at 118-19, as she did in the applications at issue, *see id.* at 151-52. Thus, even had the administrative law judge reopened those applications, the outcome would have been the same.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 11th day of June, 2017.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge